# *United States District Court*

FILED BY
AUG 1 0 2000
CLARENCE MADDOX
CLERK U S. DIST. CT.
S.D. OF FLA. FT. LAUD.

_____ SOUTHERN _____ DISTRICT OF _____ FLORIDA _____

UNITED STATES OF AMERICA

V.

ESROM WILLIAMS, DAVID NESBETH
THADDEUS WARREN, CLIFFORD GRANSTON
ALDIN WILSON, and MARC ANTHONY JOHNSON

## CRIMINAL COMPLAINT

CASE NUMBER: $00-4198-BSS$

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my

knowledge and belief. From on or about June 6, 2000, to August 9, 2000 in  Broward _____ county, in the

_____ Southern ____ District of _____ Florida ____ and elsewhere, the defendants knowingly and intentionally conspired to
import into the United States from a place outside thereof in excess of 100 kilograms of  a Schedule I controlled
substance, that is, marijuana;

in violation of Title   21 ___ United States Code, Section(s)  , 952(a) (1), 963

I further state that I am a(n)    Special Agent _____ and that this complaint is based on the following
facts:                                     Official Title

Please see attached affidavit.

Continued on the attached and made a part hereof:    [x] Yes  [ ] No

Thomas J. Redpath, Special Agent
Drug Enforcement Administration

Sworn to before me, and subscribed in my presence,

August 10, 2000 _____                              at  Ft. Lauderdale, FL _____
Date                                                    City and State

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE _____
Name and Title of Judicial Officer                    Signature of Judicial Officer

AFFIDAVIT

I, Thomas J. Redpath, having first been duly sworn, do hereby state and depose the following:

1. I am a Special Agent with the Drug Enforcement Administration ("DEA"), and have been so employed since 1996. Prior to that I was a law enforcement officer for the Pompano Beach, Broward County, Florida Police Department for approximately six years. Throughout my career in law enforcement, I have received hundreds of hours of training in drug interdiction, including training in drug identification, testing, manufacturing, pricing, concealment, importation and distribution of narcotics. The information in this affidavit is based on my personal knowledge and that of other law enforcement officers and agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause for arrests in this case, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause for the arrests in this case.

2. On June 6, 2000, Aldin WILSON, Esrom WILLIAMS and Thaddeus WARREN met with a Confidential Source of Information (hereinafter referred to as CS1) and DEA Special Agent Richard Moore, acting in an undercover capacity, at a warehouse in Broward County, Florida for the purpose of discussing the importation of a load of marijuana into the United States. During the meeting WILSON, WILLIAMS and WARREN discussed with S/A Moore and CS1 the method, manner and logistical considerations necessary to pick-up the marijuana in Jamaica.

3. Through consensually recorded telephone calls between CS1 and WILSON, it was

1

learned that WILSON was organizing the load of marijuana in Jamaica for importation into the United States. During the numerous calls between CS1 and WILSON, WILSON discussed the status of organizing the load of marijuana and CS1's status with reference to his ability to provide the transportation for the marijuana from Jamaica to the United States via airplane. WILSON also discussed completing the importation on the last weekend of July, 2000. Furthermore, WILSON stated there was a problem in utilizing the airstrip he had acquired for the pick-up. WILSON subsequently provided CS1 with an alternate landing strip in Holland, Jamaica and CS1 and WILSON agreed to complete the importation on August 6, 2000.

4.    On August 6, 2000, a second Confidential Source of Information (hereinafter referred to as CS2) flew to Holland, Jamaica to pick-up the marijuana in accordance with WILSON's instructions.  CS2 acquired approximately 1707 pounds of marijuana and subsequently delivered the 1707 pounds of marijuana to Special Agents of the DEA in Guantanamo Bay, Cuba. Prior to, during and after the marijuana pick-up on August 6th, WILSON and CS1 discussed the operation via telephone. During these calls WILSON and CS1 ensured that all logistical responsibilities agreed upon were satisfied without any problems. Once the marijuana arrived in the United States, CS1 and WILSON again conversed and WILSON was informed the marijuana had arrived here without incident. These conversations were also consensually recorded.

5.    On August 7, 2000, CS1 continued telephone contact with WILSON. During one of the consensually recorded conversations, WILSON inquired if CS1 could bring their portion

2

of the marijuana to Westchester, New York. WILSON told CS1 only to bring his and "T"'s portion, referring to WARREN, and leave the rest for "Ezz", referring to Esrom WILLIAMS. WILSON also explained that "D", referring to David NESBETH, would be "coming up" so CS1 should leave some of the marijuana for him. WILSON continued, if the marijuana could not be brought up, they would have to make other arrangements. WILSON subsequently inquired about the percentage for "us". CS1 replied "60/40." WILSON asked, "What is sixty?" CS1 inquired "What did you put on?" WILSON replied, "I know it was, I know of twelve. I don't know if David put anything else." In addition, WILSON asked CS1 if CS1 and CS2 could perform another importation in October. In a subsequent consensually recorded telephone conversation on that same day, CS1 told WILSON that CS2 could not bring the marijuana to New York. CS1 explained to WILSON, that the marijuana was at the warehouse where their meeting occurred on June 6, 2000 and WILSON should come there to pick-up the marijuana. WILSON responded by making reference to coming to see CS1 on Wednesday morning (August 9, 2000). CS1 explained that the marijuana weighed 1700 pounds. WILSON stated David, referring to NESBETH, added to the load. WILSON reiterated his intent of coming to Florida and stated he would contact CS1 upon arrival.

6. On August 9, 2000 during lunchtime, CS1 received a call from David NESBETH wherein NESBETH informed CS1 that he was in South Florida and would see CS1 when WILSON arrived. This conversation was not recorded. At approximately 2:30 p.m., WILSON made arrangements with CS1 to meet CS1 at the Hooters Restaurant located at 6345 N. Andrews Avenue, Fort Lauderdale, FL. That conversation was consensually recorded. At approximately

5:00 p.m., WILSON, WILLIAMS, NESBETH and WARREN arrived at the restaurant, met with CS1 and engaged in drug related conversations involving, among other things, the pick-up of the marijuana from the warehouse. This conversation was recorded and the meeting was surveilled. WARREN and NESBETH accompanied CS1 to the warehouse where the 1700 pounds of marijuana was stored. WILSON and WILLIAMS departed to make arrangements to obtain a vehicle to transport their portion of the marijuana. Once at the warehouse, WARREN and NESBETH took part in separating the load of marijuana into two portions; forty percent to be retained by CS1 and CS2 for their payment as transporters and sixty percent for WILSON and his associates. While at the warehouse, CS1, WARREN and NESBETH engaged in conversation regarding the importation of the marijuana. WARREN and CS1 discussed how much money WARREN invested in the importation of the marijuana and NESBETH explained his role as an organizer and pointed out logistical aspects of the importation to CS1. This meeting was recorded on video and audiotape.

7.    While, WARREN and NESBETH were at the warehouse with CS1, agents followed WILSON and WILLIAMS and watched them join up with Clifford GRANSTON and Mark JOHNSON as they traveled to and subsequently arrive at the Texaco located at 6900 N. University Drive, Tamarac, FL. While at the Texaco, GRANSTON rented a U-Haul van. GRANSTON and WILLIAMS proceeded to the warehouse in the U-Haul van and were followed by WILSON and JOHNSON in an another vehicle. Both vehicles arrived in the vicinity of the warehouse. WILSON and JOHNSON remained on the outside of the warehouse, while WILLIAMS and GRANSTON entered into the warehouse in the U-Haul van. Once the U-Haul

4

van was inside the warehouse, WARREN, NESBETH, WILLIAMS and GRANSTON loaded the larger portion of marijuana into the van. So as to prevent WARREN, WILLIAMS, NESBETH, and GRANSTON from departing the warehouse with the marijuana, law enforcement personnel effected their arrest while they were in the warehouse. JOHNSON and WILSON were arrested on the outside of the warehouse as they attempted to depart the area.

8.    Following his arrest, JOHNSON was Mirandized. JOHNSON waived Miranda. JOHNSON explained to your affiant that he had provided WILSON with ten (10) pounds of marijuana in Jamaica and that he was to receive $5,000 for that marijuana. In addition, JOHNSON stated he was told by WILSON they were going to collect "the weed" and he and WILSON were following WILLIAMS and GRANSTON who were to collect the marijuana.

FURTHER AFFIANT SAYETH NAUGHT.

THOMAS J. REDPATH
SPECIAL AGENT, DEA

Sworn to and subscribed
before me this 10th day of August 2000.

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

5